```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    WESTERN DIVISION


JERRY L. KENNEDY                                    PLAINTIFF


VS.                          CIVIL ACTION NO: 5:13-cv-226-DCB-MTP


JEFFERSON COUNTY, MISSISSIPPI by and through        DEFENDANTS
its Board OF Supervisors, JEFFERSON COUNTY
HOSPITAL, BOARD OF TRUSTEES OF JEFFERSON
COUNTY HOSPITAL, in its official capacity,
and DUDLEY GUICE, individually and in his
official capacity, REGINA REED, individually
and in her official capacity,
and JOHN DOES 1-10
```

**ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT, DENYING PARTIAL SUMMARY JUDGMENT, AND GRANTING LEAVE TO AMEND**

This cause is before the Court on Plaintiff's, Jerry L. Kennedy, Motion for Partial Summary Judgment **[docket entry no. 207]** and Motion for Leave to File Third Amended Complaint **[docket entry no. 258]**; Defendants', Board of Trustees of Jefferson County Hospital, Jefferson County Hospital, and Regina Reed, Motion for Summary Judgment **[docket entry no. 248]**; Defendant's, Jefferson County, Mississippi, Motion for Summary Judgment **[docket entry no. 254]**; and Defendant's, Dudley Guice, Motion for Summary Judgment **[docket entry no. 256]**. Having reviewed the motions and responses, applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

## I. Factual and Procedural Background

1

Plaintiff Jerry L. Kennedy began working for Defendant Jefferson County Hospital ("the Hospital") in late 1999 as an administrator. He worked in that position, apparently without relevant incident, for several years. Kennedy also worked as a consultant for the Claiborne County Hospital at the same time. But in 2013, Kennedy terminated a lucrative contract between the Hospital and a relative of Defendant Dudley Guice, which according to Kennedy, set in motion the events that led to his termination. Guice is a member of the Board of Supervisors for Defendant Jefferson County, Mississippi ("the County").

Kennedy contends that on May 9, 2012, Defendant Board of Trustees of Jefferson County Hospital ("the Hospital Board"), renewed his contract for an additional five years. The Hospital Board argues that this extension was not valid. Kennedy is suing only on his 2012 contract, but he seeks to amend his complaint to include suit based on his 2009 contract with the Hospital Board. The Hospital Board opposes this amendment.

On April 10, 2013, the Hospital Board terminated Kennedy from his position as hospital administrator without notice. Kennedy and the Hospital Board dispute whether there was cause for his termination. Regarding termination, Kennedy's contract provided:

> The Employer may not terminate this Agreement without cause. Prior to termination, the Employer must give the Employee at least one hundred twenty (120) days written notice of the Employer's intention to terminate this Agreement if there is an amicable termination. The notice of termination of the contract shall be by written notice

> hand delivered or sent by certified mail, return receipt
> requested. The Employer will provide the Employee with
> the alleged 'cause' for termination. The Employer will
> allow the Employee one hundred twenty (120) days to
> correct the cause if proven to be amicable cause.

Am. Compl. Ex. 1 ¶ 7, ECF No. 52-1.[1] After his termination, Kennedy filed for unemployment benefits, but a Mississippi Department of Employment Security ("MDES") Administrative Law Judge ("ALJ") found Kennedy had been terminated because of misconduct and denied benefits.

This case was removed to federal court on December 2, 2013 by the Hospital, the Hospital Board, and Defendant Regina Reed, a member of the Hospital Board. In the time this case has been pending before this Court, the parties have engaged in an intense and fractious motion contest which has prolonged resolution of this case and necessitated the filing of hundreds of documents with the Court. The Court has already denied a motion to dismiss from Kennedy arguing that this Court lacked jurisdiction after he voluntarily dismissed his federal law claims. See Order 8, ECF No. 203 (finding Kennedy engaged in forum manipulation). The Court has also dealt with motions from the defendants related to contumacious conduct more than once. There have also been myriad motions for extensions of time to file responses from all parties.

---

[1] The quoted language comes from the disputed 2012 extension of Kennedy's contract, but there is identical language in the 2009 contract, which the defendants do not argue is invalid and which still applied at the time of Kennedy's termination. See Attachment re Mot. Summ. J. Ex. QQ ¶ 7, ECF No. 249-29.

In his first complaint before this Court, Kennedy made claims for (1) deprivation of civil rights, (2) conspiracy to interfere with civil rights, (3) breach of contract, (4) specific performance, (5) slander per se, (6) civil conspiracy, (7) tortious interference with a contract, and (8) age and gender discrimination. On April 18, 2014, Kennedy moved to amend his complaint to eliminate his federal law claims, which the Court allowed. Kennedy's remaining claims are for (1) breach of contract, (2) specific performance, (3) slander per se, (4) civil conspiracy and (5) tortious interference with a contract.

On January 12, 2015, Kennedy moved for partial summary judgment. On March 16, 2015, the defendants moved for summary judgment. Several hours later that same day, Kennedy moved to amend his complaint. This matter is set for a pretrial conference in mid July.

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real

Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994)
(citations omitted). The moving party bears the initial
responsibility of apprising the district court of the basis for its
motion and the parts of the record which indicate the absence of a
genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S.
317, 323 (1986).

"Once the moving party presents the district court with a
properly supported summary judgment motion, the burden shifts to
the non-moving party to show that summary judgment is
inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d
377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be
believed, and all justifiable inferences are to be drawn in his
favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
But the nonmovant must meet his burden with more than metaphysical
doubt, conclusory allegations, unsubstantiated assertions, or a
mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d
1069, 1075 (5th Cir. 1994). A party asserting a fact is "genuinely
disputed must support the assertion by: (A) citing to particular
parts of materials in the record, including depositions, documents,
electronically stored information, affidavits or declarations,
stipulations . . . admissions, interrogatory answers, or other
materials . . . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment must be rendered when the nonmovant "fails to
make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.

Because the claims against the County, Guice, and Reed are unrelated to the disputed employment contract, the Court will dispose of them before proceeding to those motions that orbit the contractual issues.

### B. Jefferson County

In its motion, the County argues that Kennedy does not specify which claims he made against the County. The County argues specifically: (1) it was not a party to the employment contract, (2) it is immune from certain torts under the Mississippi Tort Claims Act ("MTCA"), and (3) the remaining tort claims fail as a matter of law. The Court agrees.

The elements of a breach of contract claim are: (1) the existence of a valid contract and (2) breach by the defendant. <u>Bus. Commc'ns, Inc. v. Banks</u>, 90 So. 3d 1221, 1224-25 (Miss. 2012). The Court finds that there was no contract between Kennedy and the County. On its face, the contract was between Kennedy and the Hospital Board. And the Hospital Board only has the statutory authority to contract on its own behalf, not to bind the County. See <u>Greene Cnty. v. Corporate Mgmt., Inc.</u>, 10 So. 3d 424, 431 (Miss. 2009) (citing Miss. Code Ann. § 41-13-35(5)(g) (2004)). Further, specific performance is an equitable contract remedy, not a separate cause of action. See <u>Bus. Commc'ns, Inc.</u>, 90 So. 3d at

1225; see also Myriad Dev., Inc. v. Alltech, Inc., 817 F. Supp. 2d 946, 955 n.23 (W.D. Tex. 2011). Because the County was not a party to the contract at issue, it is entitled to summary judgment on these claims.

Next, The MTCA waives governmental immunity for "the torts of [state] employees while acting within the course and scope of their employment," but it excludes from the "course and scope of employment" "any conduct of [state] employee[s] if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations." Miss. Code Ann. § 11-46-5(1), 11-46-5(2) (1992). Kennedy's claim for slander per se clearly meets the waiver exception. Further, "a civil conspiracy claim cannot stand alone, but must be based on an underlying tort." Aiken v. Rimkus Consulting Grp., Inc., 333 F. App'x 806, 812 (5th Cir. 2008) (per curiam) (citing Wells v. Shelter Gen. Ins. Co., 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002) (applying Mississippi law; collecting cases)). Kennedy has based his civil conspiracy claim on alleged defamatory and slanderous statements by members of the County Board of Supervisors. Because the County cannot be liable for the underlying tort, it cannot be liable for the alleged civil conspiracy. Therefore, the County is entitled to summary judgment on these claims.

Lastly, the Court considers the claim for tortious interference with a contract. This claim falls within the scope of

the MTCA immunity waiver in this case.[2] The elements of tortious interference with a contract claim are:

> 1) the acts were intentional and willful; 2) that they were calculated to cause damages to the plaintiffs in their lawful business; 3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and 4) that actual loss occurred.

Levens v. Campbell, 733 So. 2d 753, 760-61 (Miss. 1999). The County argues that "[t]here are no entries in the minutes of the Board of Supervisors . . . that could amount to tortious interference. . . ." Mem. Supp. 10, ECF No. 255. Kennedy argues that the actions of Guice were made in the scope of his employment as a member of the Board of Supervisors. However, "any act by a Board of Supervisors must be evidenced by an entry in its minutes in order to be valid." Greene Cnty., 10 So. 3d at 431. And "public interest requires adherence [to the minutes], notwithstanding the fact that in some instances the rule may work an apparent injustice." Butler v. Bd. of Supervisors for Hinds Cnty., 659 So. 2d 578, 579 (Miss. 1995) (quoting Colle Towing Co., Inc. v. Harrison Cnty., 57 So. 2d 171,

---

[2] Kennedy points to a federal case, Dearman v. Stone Cnty. Sch. Dist., No. 1:13cv267, 2014 WL 3747600 (S.D. Miss. July 29, 2014), outlining the current confusion related to whether immunity has been waived for claims of tortious interference with a contract. Although "the MTCA's exemptions to Mississippi's waiver should be liberally construed in favor of limiting liability," In re Foust, 310 F.3d 849, 864 (5th Cir. 2002), the Court will address this claim as if sovereign immunity has been waived because the most recent Mississippi Supreme Court jurisprudence so states, see Whiting v. Univ. of S. Miss., 62 So. 3d 907, 916 (Miss. 2011).

172 (Miss. 1952)). Because Kennedy can point to no valid actions taken by the County and evidenced on its minutes that would amount to tortious interference with a contract, the County is entitled to summary judgment on this claim.

### C. Dudley Guice and Regina Reed

Guice and Reed move for summary judgment on the claims for slander per se, civil conspiracy, and tortious interference with a contract made against them in their individual and official capacities. The Court finds that neither Guice nor Reed are parties to the contract, thus to the extent that the contract related claims are made against them, the Court will grant the motion for summary judgment.

### 1. Slander per se

Guice and Reed argue that Kennedy has not shown the elements of a claim for slander per se, and even if Kennedy has shown them, the claim must still fail because any statements made were truthful. Kennedy argues that there are genuine issues of material fact sufficient to deny summary judgment on this claim.

To prove a claim for slander in Mississippi a plaintiff must show:

> (1) a false and defamatory statement concerning the plaintiff; (2) unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Bros. v. Winstead, 129 So. 3d 906, 928 (Miss. 2014) (citing

Franklin v. Thompson, 722 So. 2d 688, 692 (Miss. 1998)). "Slander requires proof of 'special harm' unless the statements were actionable per se." Speed v. Scott, 787 So. 2d 626, 632 (Miss. 2001). Statements are considered actionable per se if they are:

> (1) Words imputing the guilt or commission of some criminal offense involving moral turpitude and infamous punishment. (2) Words imputing the existence of some contagious disease. (3) Words imputing unfitness in an officer who holds an office of profit or emolument, either in respect of morals or inability to discharge the duties thereof. (4) Words imputing a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade or business; and in this and some other jurisdictions (5) words imputing to a female a want of chastity.

Bros., 129 So. 3d at 928-29 (quoting Speed, 787 So. 2d at 632).

In his complaint, Kennedy alleges that Guice and Reed

> have repeatedly made statements of a defamatory nature regarding [Kennedy]'s capabilities and job performance as the Administrator of the Jefferson County Hospital. Guice and Reed have also repeatedly made statements suggesting that [Kennedy] has committed fraud and has misappropriated the funds and property of the Jefferson County Hospital for his own use. Guice has specifically made statements regarding [Kennedy]'s intelligence and competence, specifically that [Kennedy] "was not that bright."

Compl. ¶ 32. Kennedy claims these statements were made "in an open meeting, an appreciation ceremony for [Kennedy], and at a hospital ground breaking ceremony and at other times and places." Compl. ¶ 33.

In his motion, Guice argues: (1) that Kennedy is a public figure and he has not demonstrated that Guice's comments were made with malice, (2) that the statements are true, and (3) that the

10

statute of limitations has run on this claim. Kennedy counters that he is not a public figure, but, even if he is, malice has been shown; the statements are not true, and that the slander is a continuing tort.

Slander is an intentional tort subject to a one year statute of limitations. See Miss. Code Ann. § 15-1-35 (1983). In his complaint, Kennedy does not give any dates for the allegedly slanderous statements made by Guice and Reed. "The general rule in Mississippi is that the statute of limitations begins to run from the date of publication of the allegedly libelous statement to a third person." Staheli v. Smith, 548 So. 2d 1299, 1302 (Miss. 1989). Kennedy brought this suit on November 13, 2013. See Not. Removal Ex. 2 1, ECF No. 1-2. Therefore, any slanderous statements made before November 13, 2012, cannot be sued upon in this case. The Court finds that the continuing tort doctrine is inapplicable to this case.

> Where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury, or when the tortious acts cease. Where the tortious act has been completed, or the tortious acts have ceased, the period of limitations will not be extended on the ground of a continuing wrong.
>
> A " continuing tort" is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation.

Estate of Fedrick ex rel. Sykes v. Quorum Health Res., Inc., 45 So.

3d 641, 643 (Miss. 2010) (quoting Pierce v. Cook, 992 So. 2d 612, 619 (Miss. 2008)). Kennedy has not shown that Guice or Reed are continuing to make allegedly slanderous statements about him.

Although Kennedy has not supplied dates for the allegedly slanderous statements made by Guice and Reed, the Court finds that there are sufficient factual questions about these potential statements to warrant resolution by a jury. Therefore, the Court will deny the motion for summary judgment against these defendants as to this claim. At trial, Kennedy must prove not only that these statements were made but that they are still actionable.

## 2. Tortious Interference with a Contract

Kennedy alleges that Guice and Reed made statements to "representatives of Claiborne County Hospital and the Claiborne County Hospital Board of Trustees and Claiborne County Board of Supervisors regarding [his] job performance and capabilities. . . ." Compl. ¶ 41. Reed and Guice counter that "Kennedy has produced no evidence to support whether these statements were made and if the alleged statements were the reasons he was terminated. . . ." Mem. Supp. 9, ECF No. 257. While working as an administrator at the Hospital, Kennedy also worked as a consultant for the Claiborne County Hospital.

The four elements of a claim for tortious interference with a contract are:

(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiff[]

12

in [his] lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.

Par Indus., Inc. v. Target Container Co., 708 So. 2d 44, 48 (Miss. 1998). The plaintiff must also prove the existence of "an enforceable obligation between the plaintiff and another party" and "that the contract would have been performed but for the alleged interference." Id.

Reed and Guice do not deny that Kennedy had a valid employment contract with the Claiborne County Hospital or that Kennedy lost that position. Reed and Guice argue that Kennedy has not shown that whatever statements they allegedly made were done without right or justifiable cause or that these statements were the impetus of the termination of Kennedy's contract with the Claiborne County Hospital or even the contents of these statements.

As for the third element of the claim, the intent of a defendant may be implied if "the defendant knew of the existence of a contract and did a wrongful act without legal or social justification that he was certain or substantially certain would result interference with the contract." Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A., 910 So. 2d 1093, 1099 (Miss. 2005) (citing Par Indus., 708 So. 2d at 48). Interference is not wrongful "if undertaken by someone in the exercise of a legitimate interest or right, which constitutes privileged interference." Id.

13

(quoting <u>Martin v. Texaco, Inc.</u>, 304 F. Supp. 498, 502 (S.D. Miss. 1969)) (internal quotations marks omitted).

Kennedy has shown that Reed and Guice met with members of the Claiborne County Hospital staff. Further, according to Kennedy's version of the facts, Reed and Guice sought specifically to cause harm to him because he terminated a contract with Guice's son-in-law. The facts of this case are sufficient to merit further findings at trial. Therefore, the Court will deny summary judgment for Reed and Guice on this claim.

### 3. Civil Conspiracy

Guice and Reed argue that Kennedy has not shown a conspiracy between them. Kennedy disagrees.

To establish a civil conspiracy in Mississippi, a plaintiff must plead (1) an agreement between two or more persons, (2) an unlawful purpose, (3) an overt act in furtherance of the conspiracy, and (4) resulting damages to the plaintiff. <u>Bradley v. Kelley Bros. Contractors</u>, 117 So. 3d 331, 339 (Miss. Ct. App. 2013). "A person can conspire with a corporate entity." <u>Id.</u>, at 339 n.4. "These elements are quite similar to those required of a criminal conspiracy, with the distinguishing factor being that 'an agreement is the essence of a criminal conspiracy,' while 'damages are the essence of a civil conspiracy.'" <u>Id.</u>, at 339 (quoting 15A C.J.S. <u>Conspiracy</u> § 7 (2012)). And as stated above, "a civil conspiracy . . . must be based on an underlying tort." <u>Aiken</u>, 333

14

F. App'x at 812.

Because the Court denied summary judgment as to both tortious interference and slander, either may support the conspiracy claim. The Court notes that even if Kennedy can prove the existence of an agreement, "[t]here is no actionable conspiracy, however, where all that is shown is the exercise in a lawful manner of a right to terminate a contract." Shaw v. Burchfield, 481 So. 2d 247, 255 (Miss. 1985). There are sufficient factual questions concerning the elements of this claim to proceed to trial. Therefore, the Court will deny the motion as to this claim.

    D. Kennedy's Partial Summary Judgment Motion

Kennedy moved before the close of discovery for partial summary judgment arguing that the Court should find that the 2012 extension of his contract was valid and that the Hospital Board's action in terminating his employment was null and void. The Court denied a motion from the defendants to deny Kennedy's motion as premature. See Order, ECF No. 237. The Court finds that factual issues persist sufficient to deny summary judgment on this issue.

Kennedy asserts that at a meeting of the Hospital Board in May of 2012, the Hospital Board entered into a new (but identical) contract with Kennedy which extended the term of his employment until May of 2017. He states that the Hospital Board voted on and approved the new contract and that the vote is memorialized in the minutes. The Hospital maintains that the contract was never validly

formed under Mississippi law. The meeting when the Hospital Board voted on the contract occurred on May 9, 2012, but the contract is dated May 15, 2012. And the minutes from the May 9th meeting state that there was no contract for the Hospital Board to review.

The Mississippi Supreme Court has held that contracts with public boards must be evidenced on the minutes of the board to be valid.

> "It is manifest that the board . . . can only enter into an express contract by an order spread upon its minutes, and that there can be no such thing as a verbal or oral order of this board." No contract can be implied or presumed, [it] must be stated in express terms and recorded on the official minutes as the action of the board." The responsibility is placed on each person, firm or corporation contracting with a board . . . to see that the contract is legal and properly recorded on the minutes of the board.

Burt v. Calhoun, 231 So. 2d 496, 499 (Miss. 1970) (quoting Smith Cnty. v. Mangum, 89 So. 913, 914 (Miss. 1921)) (internal citations omitted). Ideally, the contract itself would be made part of the minutes when the board votes to approve it. But even where this is not done, "a contract with a public board may be enforced if enough of the terms and conditions of the contract are contained in the minutes for determination of the liabilities and obligations of the contracting parties without the necessity of resorting to other evidence." Thompson v. Jones Cnty. Cmty. Hosp., 352 So. 2d 795, 797 (Miss. 1977). Whether Kennedy has satisfied this requirement is a fact issue. Therefore, the Court will deny the motion and leave the determination of the validity of the 2012 contract for the jury.

16

Turning to the validity of his termination, Kennedy argues that the Hospital Board's action taken to terminate him is invalid because it violated the Open Meetings Act. The Hospital argues that hospital boards are exempted from the Open Meetings Act.

The Open Meetings Act provides that "the formation and determination of public policy is public business and shall be conducted at open meetings." Miss. Code Ann. § 25-41-1 (1976). "All official meetings of any public body . . . are declared to be public meetings and shall be open to the public at all times unless declared an executive session." Miss. Code Ann. § 25-41-5 (2012). "Public and private hospital staffs, public and private hospital boards and committees thereof" are exempted from the definition of a public body. Miss. Code Ann. § 25-41-3(a)(ii) (2013). Because the Hospital Board is not subject to the requirements of the Open Meetings Act, Kennedy's argument fails. Therefore, the Court will deny summary judgment.

E. Kennedy's Motion for Leave to Amend

Kennedy moved after the close of discovery to amend his complaint to include the 2009 contract. "Rule 15(a) requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." Jones v. Robinson Prop. Grp., LP, 427 F.3d 987, 994 (5th Cir. 2005) (citation and internal quotation marks omitted). "Leave to amend is in no way automatic, but the district court must possess a

17

'substantial reason' to deny a party's request for leave to amend." Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n, 751 F.3d 368, 378 (5th Cir. 2014). Factors for denial include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." Id.

Despite the tardiness of Kennedy's motion, the Court can see no substantial reason to deny leave to amend. The language at issue in both contracts is identical, and the issues related to Kennedy's claims are not changed by this amendment. The Court finds no delay, no previous failure to cure, no prejudice to the defendants, and no futility. Therefore, the Court will grant the motion for leave to amend.

F. Jefferson County Hospital and its Board of Trustees[3]

The Hospital argues that the claim for breach of contract, the only claim asserted against it, should be denied because: (1) Kennedy is collaterally estopped from arguing that he was not fired for cause, (2) Kennedy has not shown the elements of a claim for tortious breach of contract, and (3) state law allows the Hospital to terminate a contract when it is in its best interest to do so. Kennedy counters: (1) that collateral estoppel is inappropriate

_____

[3] The Court will analyze the claims against the Hospital and the Hospital Board as one and refer to the two defendants collectively unless context requires otherwise.

here, (2) that this is a claim in contract not in tort and the elements have been met, and (3) the code section does not apply to these facts.

The Supreme Court has held that "when a state agency 'acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986) (quoting U.S. v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)). "This is done for the purposes of judicial economy, and because 'a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.'" Stafford v. True Temper Sports, 123 F.3d 291, 294 (5th Cir. 1997) (quoting Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991)). "Under Mississippi law, res judicata or collateral estoppel precludes relitigation of administrative decisions." Smith v. Univ. of Miss., 797 So. 2d 956, 963 (Miss. 2001). "Specifically, the decisions of the MESC[4] are given preclusive weight in Mississippi courts, if supported by the evidence and in the absence of fraud." Cox v. DeSoto Cnty., Miss., 564 F.3d 745, 748 (5th Cir.

---

[4] "MDES was previously called the Mississippi Employment Security Commission (MESC)." Wright v. Custom Ecology, Inc., No. 3:11cv760, 2013 WL 1703738, at *2 n.2 (S.D. Miss. Apr. 19, 2013).

2009) (citing Miss. Code Ann. § 71-5-531 (2012); <u>Raiola v. Chevron</u>
<u>U.S.A., Inc.</u>, 872 So. 2d 79, 84 (Miss. Ct. App. 2004)).

Kennedy did not appeal the MDES finding, which "does not
undermine [its] preclusive effect." <u>See id.</u> Further, Kennedy has
not argued either that the decision was "tainted by fraud or based
on a lack of substantial evidence." <u>See id.</u> Therefore, the Court
will give the MDES's findings of fact their full preclusive effect
here.[5] The ALJ-found facts are:

> Claimant [Kennedy] was employed from 09/27/1999 to
> 4/11/2013, as an administrator, by Jefferson County
> Hospital, Fayette, Mississippi, when he was discharged by
> the board members for insubordination.
>
> Prior to a board meeting on 03/11/2013, the board
> requested claimant to bring invoices on some programs,
> his travel information to discuss financial records,
> which he failed to do as instructed. He was instructed to
> bring the same information for the next board meeting on
> 03/19/2013.
>
> On 03/19/2013, he failed to bring the information again
> as instructed. The board was concern [sic] that the
> hospital's number of patients had dropped, as he was a
> consultant/administrator for another hospital, who was
> their competitor. The secretary board of trustees [sic]
> ask [sic] claimant to make a decision as to which
> hospital was he going to work for, when he told the board
> he was not answering any questions and walked out of the
> meeting. This was the third time claimant had walked out
> of a board meeting, but the employer did not have dates.
> However, the employer terminated him on 04/11/2013, for
> insubordination. Claimant was aware of the policy for

---

[5] It is worth noting that "collateral estoppel does not
apply to state administrative decisions where Congress has
provided for a detailed administrative remedy." <u>Cox</u>, 564 F.3d at
748-49 (citing <u>Astoria Fed. Sav. & Loan</u>, 501 U.S. at 110-14). But
this is not the case for a breach of contract claim, and Kennedy
does not raise this argument.

insubordination, as his position was one with authority to terminate subordinates for insubordination as well.

Attachment re Mot. Summ. J. Ex Y 2, ECF No. 249-11. These facts are entitled to preclusive effect. The ALJ concluded based on the above facts and the law that:

> The claimant was discharged for a known policy for insubordination.
>
> The employer was trying to resolve some financial records, which obviously the claimant was not co-operative in this matter when he deliberately became insubordinate towards the members of the board, and walked out. Such behavior shows a willful and wanton disregard of the employer's interest, and one with authority. Claimant's behavior does rise to the level of misconduct connected with the work, as that term is defined by the law.

Attachment re Mot. Summ J. Ex. Y 3, ECF No. 249-11.

Kennedy quibbles that the ALJ did not apply the correct legal standard. He argues that the ALJ did not apply the standard for insubordination. The Mississippi Supreme Court defined insubordination as "[a] constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority." Sims v. Bd. of Trustees, Holly Springs, Mun. Separate Sch. Dist., 414 So. 2d 431, 435 (Miss. 1982) (internal quotations omitted). But this definition "was not intended to be an exclusive and binding definition of insubordination." Young v. Miss. State Tax Comm'n, 635 So. 2d 869, 873 (Miss. 1994). The ALJ applied the term misconduct, as judicially defined, to the facts before him:

21

> "Misconduct," as used in the unemployment compensation statute, [is] conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, c[o]me within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion [are] not considered "misconduct" within the meaning of the statute.

Wheeler v. Arriola, 408 So. 2d 1381, 1383 (Miss. 1982). The Court finds that despite the facts established in the MDES proceeding, sufficient factual issues remain to preclude the granting of summary judgment. Whether Kennedy was terminated for conduct amounting to cause as required by his contract is a question best answered by a jury of his peers. The Court will deny the motion as to whether Kennedy's termination amounted to breach of his employment contract.

Turning to the notice and opportunity to cure provisions, the Court finds that they were not violated. Kennedy was entitled to notice and an opportunity to cure if his termination was "amicable." The Hospital argues that the termination was not amicable. Kennedy disagrees. The contract does not define amicable.

"If the language in the contract is clear and unambiguous, the intent of the contract must be effectuated." Bros., 129 So. 3d at

22

913. "When terms in a contract are not defined, [the court] 'give[s] the words in the document their commonly accepted meaning.'" Sanderson Farms, Inc. v. Gatlin, 848 So.2d 828, 836 (Miss. 2002) (McRae, P.J. plurality opinion with three justices concurring and two justices concurring in the result only) (quoting Parkerson v. Smith, 817 So. 2d 529, 541 (Miss. 2002)). The Court "look[s] to prior case law to help determine the meaning of the terms of [a] contract." Burton v. Choctaw Cnty., 730 So. 2d 1, 6 (Miss. 1997). But finding none defining an amicable termination, the Court "looks to dictionaries to ascertain the meaning of a word in its common or popular sense." Lawson v. Honeywell Int'l, Inc., 75 So. 3d 1024, 1028 (Miss. 2011) (looking to a dictionary to define a word not defined in a statute). The dictionary defines amicable as "characterized by or showing friendliness; friendly." THE AMERICAN HERITAGE DICTIONARY 102 (2d college ed. 1991). It cannot be said in this case that the Hospital and Kennedy parted in a friendly fashion. Therefore, the Court finds that the notice and opportunity to cure provisions were not triggered.

The Hospital next argues that Kennedy's breach claim sounds in tort rather than contract. "Tortious breach of contract requires, in addition to a breach of contract, some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort." Eselin-Bullock & Assocs. Ins. Agency, Inc. v. Nat'l Gen. Ins. Co., 604 So. 2d 236, 240 (Miss. 1992) (citing So.

Natural Gas Co. v. Fritz, 523 So. 2d 12, 19-20 (Miss. 1987)).
Whether Kennedy's claim is for tortious breach is important at this
stage because "[a]lthough the MTCA does not apply to 'pure contract
actions,' it does apply to claims for tortious breach of contract."
Papagolos v. Lafayette Cnty. Sch. Dist., 972 F. Supp. 2d 912, 932
(N.D. Miss. 2013) (citing City of Grenada v. Whitten Aviation,
Inc., 755 So. 2d 1208, 1213 (Miss. Ct. App. 1999)). And Kennedy has
not complied with the requirements of the MTCA, which would vitiate
his claim here. The Hospital is the only defendant to argue that
Kennedy's breach claim should be ruled a tortious one.

The Hospital argues that the Court must read between the lines
of Kennedy's taxonomy of his claims and find based on the specific
allegations that he alleges a tortious breach. See Whiting v. Univ.
of So. Miss., 62 So. 3d 907, 915 (Miss. 2011) (finding that a
plaintiff's claim for breach of contract was really a claim for
tortious breach of contract). In support of this reading of the
complaint, the Hospital states:

> In addition to sending a notice of claim under the MTCA,
> paragraphs 17 and 18 of the second amended complaint
> allege that Kennedy was terminated "without proper cause
> or notice" and that, on the date of his termination, the
> [Hospital Board] "intentionally omitted from its written
> agenda the goal to unlawfully terminate" him. Similarly,
> in both paragraph 12 of his amended complaint, as well as
> in his responses to the summary judgment motions filed by
> the co-defendant, Kennedy repeatedly maintains that he
> was fired because he terminated the consulting contract
> of [Guice's] son-in-law. Such allegations are precisely
> what the Mississippi Supreme Court deemed to be
> allegations of a tortious breach of contract in the
> Whiting case.

24

Reply 4-5, ECF No. 296 (internal footnotes and citations omitted). The Court is not persuaded.

Kennedy sent a notice of claim because he also made tort claims in his complaint. That he was terminated without cause or notice speaks directly to the breach element, which is common to both claims. The omission of the goal and the animus of Guice against Kennedy are insufficient to convert this claim into a tortious one. Although these weigh in favor of such a determination, Guice had no direct ability to terminate Kennedy's contract, and it is a legal issue as to whether the Hospital Board's "goal" to terminate him was unlawful. The Court finds that Kennedy's claim sounds only in contract.

Finally, the Hospital argues that it had statutory authority to terminate Kennedy's contract. Kennedy disagrees.

Mississippi law provides that a hospital board of trustees may "terminate . . . contracts when deemed in the best interests of the community hospital." Miss. Code Ann. § 41-13-35(5)(g) (2004). This authority to terminate contracts when in the best interests of the hospital includes contracts "with . . . any individual . . . for the providing of . . . services by or to the community hospital . . . Or regarding any facet of the . . . operation of the community hospital." § 41-13-35(5)(g).

The Hospital argues that either "Kennedy's repeated

misconduct" or his "outrageous salary"[6] alone would make it in the best interests of the Hospital to terminate his contract. No court, either Mississippi appellate or federal, has clarified what the best interests of a community hospital are. But the Court finds both arguments unpersuasive. First, Kennedy's misconduct is a fact question which this Court has not answered. Second, Kennedy's salary did not come as a surprise to the Hospital; it also signed his contract which stated his salary. While it may not have been good business judgment for the Hospital to agree to such a salary in the first place, it may not be in the best interest of the Hospital to terminate contracts on the basis of financial concerns.

Having been unpersuaded by the Hospital's arguments and finding that there persist factual issues requiring resolution by a jury, the Court will deny the motion for summary judgment as to the breach of contract claim against the Hospital.

### III. Conclusion

The Court grants in part the defendants' motions for summary judgment and denies the plaintiff's motion for partial summary judgment but grants his motion for leave to amend.

As for the County, the Court finds that all claims against it

---

[6] Under the contract, Kennedy's salary at the time of his termination was $329,423.00 per year. The Hospital asserts that the average annual salary of hospital administrators is around $96,000.00 per year. Mem. Supp. 18-19, ECF No. 250 (citing Starting Salary for a Hospital Administrator, http://work.chron.com/starting-salary-range-hospital-administrator-15429.html (accessed on March 8, 2015)).

failed as a matter of law: the County was not a party to the contract, was immune from liability for slander and conspiracy, and took no actions evidenced in its minutes that could be seen as tortious interference.

As for Reed and Guice, the Court finds that Kennedy only made claims for slander, tortious interference, and conspiracy against them as they were not parties to the contract. The Court finds that all three claims shall go forward.

As for the contract claims, the Court finds that partial summary judgment should be denied because the validity of the 2012 contract requires resolution by a jury and the Hospital Board is exempt from the Open Meetings Act. Further, the Court finds that amending the complaint to include breach of contract claims based on the 2009 contract brings no prejudice to the defendants. Lastly, the Court finds that Kennedy's breach claim continues but only to determine whether there was cause to terminate him; the notice and opportunity to cure provisions of his contract were not breached because the termination was not amicable.

## IV. Order

IT IS HEREBY ORDERED THAT Plaintiff's Motion for Partial Summary Judgment is DENIED.

FURTHER ORDERED that Defendant's, Jefferson County, Mississippi, Motion for Summary Judgment is GRANTED.

FURTHER ORDERED that Defendant's, Dudley Guice, Motion for

Summary Judgment is GRANTED IN PART and DENIED IN PART.

FURTHER ORDERED that Defendants', Board of Trustees of Jefferson County Hospital, Jefferson County Hospital, and Regina Reed, Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

FURTHER ORDERED that Plaintiff's Motion for Leave to File Third Amended Complaint is GRANTED.

SO ORDERED this the 13th day of July 2015.

                        /s/ David Bramlette
                        UNITED STATES DISTRICT JUDGE

28